The jury in sentencing rejected the life option for Mr. Stewart. They thought he'd be eligible for parole at 96 years old after serving 49 years. But being ineligible for parole, Mr. Stewart has proven prejudice because the 70-year sentence puts him in prison 21 years longer than the jury intended. The jury wanted him eligible for release at 96. This is prejudice. So there's a reasonable probability that the jury would have chosen 49 years or so had they been correctly instructed on his parole ineligibility. This is prejudicial under Strickland. Of course, the error of law here is that the District Court misapplied Strickland with its practical effect conclusion. There is no practical effect exception to the Strickland test. This ultimately became a math assignment for the jury, how much time to give. And the only instruction in sentencing contained a mathematical variable in it that was wrong. So this reasonably affected the result. I think that the District Court was thinking, well, you're saying that this isn't a part of Strickland, but realistically or practically speaking, what are the chances that he would still be living at 96? Is that kind of what the District Court concluded and that, therefore, that is relevant for prejudice? His age is relevant, I'm sure, Your Honor. I'm not disputing that. Because it would be relevant to the jury, right, is what you're saying? Yes, but it's obviously biologically possible to live to 96. Go ahead. Well, and the precedential value of this case likely wouldn't be sweeping, but while it's biologically possible to live to 96, if this case involved a 20-year-old defendant, I think the prejudice would, you know, serving 21 years longer than the jury intended, that would be prejudice on all four legs in my view. Was there any evidence presented to the jury on life expectancy or any of that kind of information? No, Your Honor. The only evidence submitted to the jury in this sentencing hearing, which is a separate proceeding under Arkansas law, were his prior convictions, including the problematic one that triggered his parole ineligibility. But the same jury did both stages, right? That's correct, Your Honor. So the jury heard the guilt phase. They did. And how would you do a resentencing hearing without retrying both phases? Well, I think— You make a point of saying all we want is a resentencing hearing, but how is that feasible? Well, the proceeding being challenged here is sentencing, not the guilt phase. No, but you want a jury resentencing, right? The jury resentencing, it could become a question of what the parties select or agree to on remand. Is there an option not to have a jury resentence? The judge could—if the parties agreed, it's my understanding under Arkansas law that the judge could— I mean, there could be an agreement— But there's been no stipulation. So as far as we're concerned, what you want—the relief requested is a jury resentencing at which, obviously, unless you'd simply admit the transcript from the first guilt phase, both phases are going to have to be retried. So the jury has a complete picture for a proper sentencing. What you're saying is the proper sentencing. Well, guilt would not need to be— That to me is sort of incontestably right. The guilt phase would not be—there would be no need to retry guilt. No, but the jury has to know the guilt facts. Well, certainly, Your Honor. In order to make a sensible— Yes, Your Honor, you're discussing just the practical nature of what it would look like on remand. No, I'm following up on your notion. This whole appeal is over fair sentencing. That's correct. And a resentencing in front of a jury which did not have the full—a full picture of the offense of conviction would not be a fair sentencing. I suppose stipulating to the guilt record would be what would happen at that point. Well, I don't know. Since we're not disputing guilt. I don't know. But then did Mr. Stewart testify at the defense—at the guilt phase? He did. Oh, so we've got to have that again. I disagree. But that's got to have played a huge role in the jury's deciding the sentence. To have—I mean, his—the testimony of the convicted defendant and the credibility and demeanor and everything else that goes into weighing that for sentencing purposes has to be reconstructed, doesn't it? I disagree, Your Honor. Under Arkansas law, sentencing is a separate hearing in and of itself. Well, I'm talking about fair sentencing because that's the pitch of your appeal. Well— To have fair sentencing, the new jury has to at least have Mr. Stewart's testimony. Well, I suspect that what would happen on remand would be the parties would be free to argue the facts from the record or make stipulations of some sort because ultimately the issue here is the incorrect instruction on his parole and eligibility. He's ineligible for parole. And in our view, if the jury were fine with his potential release after serving 49 years, there's a reasonable probability that they would sentence him to 49 years or so upon correct instruction about his ineligibility for parole. You keep overstating what the jury—the jury said would be aware that he would be eligible in 49 years. I don't even know if they were instructed about the discretionary aspect of parole, but most jurors with any sense of the system would know that the first day you're eligible is not when you're likely to be paroled. True. Your whole hypothetical is what they'd obviously do is give him 49 years is to me very questionable. Well, the standard is a reasonable probability of a different outcome. So in our view— So it could be 105 instead of— It could. and the realistic possibilities of this having any real impact get slimmer and slimmer as I think about it. Well, Your Honor, the jury was—we know, we can glean from the record for a fact that the jury was okay with him being released after 49 years, potentially. And this is the general problem of injecting parole eligibility information. I don't agree with okay. I know that's a favorable way for you to say it, but that's not my view of what the jury probably had in mind. Well, I could say it differently, Your Honor. I think that they certainly considered when he might be eligible for release under the problem— In the April 70-year sentence. And they were told about his eligibility for parole after serving 70%. This is a central theme of our argument is that when directly placing parole eligibility information in front of a jury, it creates the perfect conditions for prejudice when it's wrong. Yes, traditionally, parole is a collateral matter. But in Arkansas, which I believe is only one of two states that does this, when the parole information is presented to the jury, they're going to do mathematical calculations just like the parties did in their examples in sentencing argument. So there's a huge likelihood of prejudice. So while the jury presumably was fine—potentially okay, let's put it that way, with his release after 49 years, there's a reasonable probability that they would have sentenced to that number or thereabouts had they known that he was absolutely not eligible for parole. You say that the jury could have sentenced him to life, but they didn't. But maybe they did. I mean, what this comes out to, 96 if he served 70% of the 70-year plus his age of 47. Is that right? Yes, Your Honor. The effect of life sentence argument is a weak one because they—I argue because they rejected the life option. That was at least correct in the problematic instruction used. They rejected life and chose a term of years, which is a math assignment. And the only jury instruction used to help them in their decision contained a mathematical error in it. You're guessing what the jury talked about back there. And for some of us who have talked to juries after they're finished, it's a slippery slope you're on here with guessing what they're going to—why they did what. I would agree, Judge Beam, but there is one thing we certainly do know. They rejected life, and they, it would appear, were okay with the possible release after 49 years. And if they knew he weren't eligible for parole, it's our position that there's a reasonable probability they would have sentenced him to something around 49 years or less than 70, satisfying Strickland's second prong. Thank you. Mr. Jones. May it please the court. In the instant case, Stewart raped an intellectually disabled young woman who had the mentality of a six-year-old. He knew of her disability when he committed the crime. At trial, when he testified, he showed no remorse about the crime. He even went so far as to blame the victim. It took the jury 27 minutes to determine his sentence of 70 years. And I start with these facts because they're important in determining whether he was prejudiced. Strickland v. Washington asked, you know, any court reviewed in an effective assistive counsel matter to consider the totality of the evidence that was before the jury. And it's that very evidence that resulted in the sentence that Mr. Stewart received. And he claims that his sentence is unreliable because the instruction on parole eligibility was incorrect. However, he's failed to meet his burden, and it is his burden of showing that there is a reasonable probability that but for his counsel's errors, the result of the proceeding would have been different. But we do know, though, that the jury rejected life. Of all the speculation that we probably shouldn't make about what the jury's doing back there, one thing we know is they did not choose life. Yes, Your Honor. Their choice of life. So how does that factor in in your view? Well, we know to the extent that the jury even considered parole eligibility, and he hasn't shown that they did consider parole eligibility. But don't we assume that juries read the instructions and apply them? Here the parole eligibility instruction was discretionary. It said in determining the sentence, you may consider the possibility that he will be paroled. And his counsel even argued to the jury at sentencing said don't pay any attention to 70% parole eligibility because parole eligibility isn't guaranteed. It's not guaranteed that he will be paroled. So his counsel even urged that parole wasn't guaranteed. But even if they did consider parole eligibility, what we do know is that they wanted him to spend a long, long time in prison. They wanted him to not even be eligible for parole until he was likely past the span of his natural life. What about the other benefits of parole? It seems like there are benefits that perhaps a jury could consider that it's better for the institution and it's better for the person if they have hope as opposed to a life sentence. So there might be other circumstances or other reasons why a jury might say, we want this guy not to be completely hopeless in the prison for himself and the other people there. Give him the idea that he might be able to, upon good behavior, get out of there. If he lives, is able to live in the prison population at the age of 96. But we don't, I mean, I don't know why the jury didn't give him life in prison versus an effective life in prison sentence. And the jury ultimately doesn't make decisions about parole. They make sentencing decisions. And here they sentenced him to 70 years. And the prosecutor in this case, she hammered on the facts, the bad facts of the case. She, in the sentencing, closing sentencing argument, went over and recounted, you know, the fact that he had raped an intellectually disabled young woman. There was a pregnancy that resulted from the, you know, rape.  And also they went over, the prosecutor really went over Mr. Stewart's seven previous felony convictions and detailed those seven previous felony convictions and the fact that those sentences in all of those cases were light. The fact that he was still out and able to commit this rape even after having committed seven felonies. And the state's argument, based on those facts, was to give him a prison sentence that would keep him in prison for the rest of his life. And the state's closing, the parting words that the jury heard before they went back to deliberate Mr. Stewart's sentence, the state argued, life is an appropriate verdict, or in the alternative, anything that will keep him in prison for the rest of his life. And we ask that you render that sentence. And that's exactly what the jury went back and did. So it said, even if you don't give him life, alternatively give him a sentence that will keep him in prison for the rest of his life. And they figured that out? Is that your point? They calculated that out that it would be 96 years or such? We don't know that if they did really take into account his parole eligibility. They were back there determining his sentence for 27 minutes. That's how long it took them to determine the sentence of 70 years. So even if they did take into account that he would, after that 70 years, after 70% of it was served, that he would be eligible for parole, it's not likely that they really thought that he would live to be 96 years old and see the day that he was paroled, especially when his counsel told him, look, don't pay any attention to parole eligibility. It's not guaranteed. And so ultimately, even if the jury did consider the possibility that Stewart might one day be paroled, it didn't really matter to them. What mattered to the jury was giving Stewart a sentence such that he would never be out in the community committing felonies again. As Judge Marshall correctly reasoned in the district court, if the jury had heard correct parole eligibility instruction, it's possible that they may have given Stewart a shorter sentence. But in light of the bad facts, Stewart's age at the time of the trial, and the lengthy sentence the jury did impose, it's just that. It's a possibility. And he has to show a reasonable probability. He hasn't met his burden by just showing a possibility. And for all those reasons, we would respectfully ask this court to affirm the district court's opinion. Does he have some rebuttal time? No, he does not, sir. I think we understand the issue. It's been well briefed and argued.